Your Honor, David Cronenmaier again. Your Honor. This case illustrates what happens when an individual takes the law into their own hands, and in this case it was his fellow Norm Wade. When confronted with allegations that he was a child molester, he unilaterally seized $2.5 million of audio-visual post-production equipment, unilaterally shipped it off to another city for storage, and unilaterally extirpated the film production credits. Before you get too far into it, there's been a question raised about whether you have properly pled diversity jurisdiction. The allegations indicate that you have pled that you're a resident of California. Is there any dispute in this case that either about your citizenship or about the citizenship of travelers to create diversity? I don't believe there is, Your Honor. Okay. All right. Go ahead. I think the most egregious part of this is Wade's cooking up false allegations that I personally had embezzled funds from him. I did not do this, and I would not be standing in front of you if I had. But let's imagine a world where this actually happened. We believe it still would have been incumbent upon Mr. Wade to pursue his judicial remedies rather than invent some bizarre form of extrajudicial process. Even if there was a dispute involving Gold Circle Films, it certainly had nothing to do with the studio venture or with the production credits to the films, each of which was produced by a separate special purpose entity. And I should add that to the extent this might be considered an issue by the court, it certainly would be a tribal issue of material fact that would preclude summary judgment. So the question is, how does this alignment of facts fit into the first-party property policy issued by travelers? The district court conceded that we were beneficiaries of the policy but got hung up on the policy's intentional ax exclusion. We respectfully submit that the Shaved Foods Against Innovative Products case that we cite at page three of our reply brief is directly in point of disregard. The district court did not analyze at all our contention that the policy required the insurer to consider the interests of each of the insured separately, nor did the district court deal with the reductio ad absurdum argument that many types of intentional acts clearly fall within the scope of a property policy. Kennedy. Who's the insured that you're standing behind or in the shoes of or claiming to be here? A sentient studio, Your Honor, which was one of the partners or members of Gold Circle Studios, which was the limited liability company. So all of the members of that LLC are themselves insured under the policy? We believe that's the import of the Shaved Foods Versus Innovative Products decision, Your Honor. Is that a function of the law of the state where the LLC was formed, or is that a matter of general law? It's a matter of insurance law, Your Honor, as interpreted by the California Court of Appeal. So anyway, I respectfully submit that a ruling by this Court that any type of intentional act would be excluded from the terms and conditions of a conventional property policy would indeed be a surprise to insurers the world over. We further respectfully submit that the cases support this interpretation. The Cuevas v. Allstate case from January in the Southern District requires some other exclusion in addition to an intentional act for the latter exclusion to apply. And the Traders and General Insurance Company v. Freeman case, which is relied upon by travelers, actually holds the opposite of what travelers wants for it to hold. That case, the clause in that case specifically excluded the acts or decisions of, quote, any insured, and the Court specifically found that the use of the phrase, the insured, as opposed to any insured, would not overrule the basic principle that the insurer is required to consider the interests of each insured separately. Now, this is where it gets interesting, because the traveler's policy in this case excludes the acts or decisions of any person. So you're tempted to ask, well, who is this person? And I'm going to pick Saddam Hussein. So in other words, the policy should be read as the acts or decisions of Saddam Hussein, which were intentional, would preclude our company from recovering under the terms of the policy. But this clearly is ridiculous. It's clearly absurd. And as we point out at page 11 of our reply brief, we believe that the any person who is referred to in the traveler's exclusionary language is the same person referred to in the separate interests clause, which provides that the act or neglect of any person other than the insured or beyond the direction or control of the insured will not affect this insurance. And this makes complete sense, because if it had been our intentional act, that clearly would vitiate the terms and conditions of the policy. Or if it had been the intentional act of our agent, that would clearly vitiate the terms and conditions of the policy. But our argument is that if it's a person other than the insured or the insurance agent who commits the intentional acts, then the separate interests clause prevails over the intentional acts clause. And in this case, there can be no question but that Mr. Waite's acts and conduct were beyond our control, and thus the intentional acts exclusion should not apply. I'll be happy to take any questions. Okay. So your primary theory is that you're an actual first-party insured, correct? That's correct, Your Honor. Do you also rely on third-party beneficiary? I know that we've gotten into that a little bit on the prior case. That's correct, Your Honor. And in this context, the policy specifically mentions Ascension Studio as having property that is insured. Right. But there's, under the property clause, there's the, it talks about the personal property of others. So let's just, do you have any rights under that? Yes, we do, Your Honor. And that's the end point. That's the end point, I'm sorry, of the Shade Foods v. Innovative Products case. Ours is the property of others that was being insured. All right. You're trying to get coverage for two kinds of property. One is this, I'll call it just a group of equipment, right? That's correct, Your Honor. And the other is, I'll call it loss of credits. That's correct, Your Honor. How does credits fit into the definition of property or covered property in the policy? Well, in this case, Your Honor, we're relying on decisions of the California courts. I believe one of them is the Legosi case, which specifically hold that film credits are indeed property. In which case? We cite them in our brief, Your Honor. I'd be happy to get a page right. Well, why don't you just save that for rebuttal? I don't want to take your time. Do you have anything else you want to argue now? I do not, Your Honor. Thank you. That leads to a question I was going to ask. Going to the credits question, if we look at the insuring agreement. Yes. It says the company will pay for direct physical loss or damage to covered property. How do you get physical damage or loss to a credit? The complaint alleges that the credits were there, but then the film negative was mutilated so that the credits were excised. And the fact of the matter is, and I think it appears as a matter of the record, that all of these credits originally appeared in the films until they were extirpated by weight. So that would be that's not a loss of credits in the sense of intangible property. You're claiming damage to tangible property. But in this case, the tangible property, that is the film element itself, is what physically embodies the credits. Right. But the credit itself, just by itself, as a matter of contractual right, would not be physical loss or damage. No, but the credits indeed are property. And I don't know. That's not the point. In other words, the California Supreme Court in the different cases under different statutes under different property can say anything it wants to. Yes. But you're drawn back to the policy that you're dealing with in every case. And where in this case, I think it was a question you've been asked, do you find something that says film credits are covered property for purposes of this policy? I wish it was that specific, Your Honor. We don't find that exact language. And you would have trouble with the insuring agreement if you did because it covers only physical property. I know of no other way to embody the credits, Your Honor. Well, I don't know either. But if that's the case. Well, if you don't, then that leads to the conclusion they're not covered by the policy. I don't believe so, Your Honor. I look at cases like Smith v. Montoro, and I look at the Schaefer-Karp case, which we also saw. I don't disagree that film credits and other intangible things can be property. That's been established for probably hundreds of years. Yes. But the point is you have to look at the policy, not some theory of what property can be. And if the policy doesn't cover the property that you want to argue about, then there's no coverage. That's a basic tenet of insurance law. Well, Your Honor, there are a number of cases which hold to the contrary. For example, trade secrets have been held protected property under a property policy similar, if not identical, to the one here, title defects. The government's restricting access to property during emergency circumstances. These are set forth at page 37 of our opening brief. So there are a number of cases that address that issue. All right. Well, I think we understand that argument. Do you want to reserve the balance of your time? Yes. Thank you very much, Your Honor. Thank you. Good morning, Your Honor. Richard Weston for Travelers. I'd like to address some issues that were discussed here and also in the reply brief. Because I know the Court's very familiar. You were nodding your head when I was asking about diversity. Yes, Your Honor. We don't dispute the existence of diversity in the case. You don't challenge the, you know, that there is diversity jurisdiction. We do not challenge that, Your Honor. There are really several issues that we're looking here, several distinct claims and several distinct coverages available under this policy. This is a commercial property package policy, essentially. There are two parts. The first part is the property coverage, which, as the Court points out, covers injury to tangible physical property. There is a second form called a business income form, which covers business income loss due to and caused by direct physical loss to tangible property. Under the property form, there is coverage, as Your Honor has pointed out, for damage to personal property of others, which could be in the care of custody or control of the insured under various specific requirements. The purpose of that coverage is obviously to protect the insured from losses, the property which it is using in its business, which it may not own. Right, but what does it mean, then, when it says to cover that kind of property payment by travelers to personal property of others will be only for the account of the owner of the property? Yes, the idea would be that the traveler would be in a position to pay the owner of the property for damage to that property, or if it chose to pay the insured, that money then would then go to the owner of the property to make sure that the owner of the property, the damaged property, was paid. The idea is to benefit the insured, who then obviously is not going to face a liability suit, that sort of thing, if the property coverage takes care of that problem. But does that not – could that not be construed, then, as also giving standing and rights to the owner of the property? Yes, and that's the point I'm getting to, Your Honor. I think it doesn't make them an insured. No, it doesn't make them an insured, but it makes them a third-party beneficiary. It makes them a third-party beneficiary to the extent of the right to collect for damage to that property. Right. But that's only to enforce those very limited rights for damage to that personal property they own, which happened to be in the care-custody control of the insured when it was damaged. All right. So like the studio equipment, why couldn't sentient then sue travelers to collect? We do not dispute that they could if, if they can meet the threshold requirement that that studio equipment was in the care-custody control of the insured when damaged or within a thousand feet or whatever else it says. Is there coverage under the same provision for the owner of the property for the credits? No, there is not, and that's what I was getting to. The business income form is a separate form of the policy which does not confer any rights on any third-party to contract. What that form provides is that it will provide coverage for loss of business income to, quote, the insured. The insured is specifically defined in this policy under endorsements contained in the policy as various entities that do not include Mr. Cronenmaier and do not include Sentient Studio. So standing under the business income form to assert a claim is different than standing to assert a claim for damage to personal property of others. We do dispute that. Well, credits can't be classified as personal property of others? No, they cannot, Your Honor. What you would have to have is physical, if there were physical injury to tangible property and that caused the insured to lose income, the insured would lose. So it's limited to physical injury of tangible property. Loss of income resulting from that. That particular coverage. Yeah, that particular coverage. And the property coverage has a specific exclusion that says we will not cover consequential or remote loss, which is essentially income loss, because that's being picked up under this other coverage, which is the income coverage. Correct. The business income coverage. That's right. Go ahead. And that's how the policy is structured. So we're really looking at several different issues of standing here. We don't dispute that if it turns out that the property, the recording studio equipment property, I'll call it, was personal property of others, which I believe it was, and that it was in the control of one of our named insureds, and it was damaged while under that control, and the damage did not result from something that's excluded, that they would have standing to come in and ask us to pay for the physical damage to the property under the property form. We do dispute that they have any right to seek income coverage under the business income form because that is expressly limited to the defined insurers under the endorsement, which does not include the appellants. And that is what the district court found, and we believe that was entirely correct. Okay. Now, with regard to the studio equipment, let's assume you've given us all the steps, the whiff, if, if, if. Are there any ifs in there that you think apply that preclude coverage? Yes, Your Honor. And that is, there are several ifs in there, some of which were ruled upon by the district court and some of which were not, but can be considered by this Court de novo, obviously, since we're dealing with summary judgment. Now, the, basically the district court ruled that the acts or decisions exclusion precluded coverage for any of these claims because Mr. Wake, I'm sorry. You're just focusing, you're talking about both or just, you're talking about the equipment and the credits? Yes. I'm talking about both. Okay. Just so I can sort out, though, because the film credits have their own complications, but I just want to make sure as you go through this, if there's a differentiation, you will explain it between the equipment and the film credits. Yes, Your Honor. Thank you. And I will explain that, and I think that the film credit issue, I think, is disposed of under the business income forms requirement of an insured. But I also think that the film credit issue is also disposed of under the arguments I'm going to make, although I will delineate the differences where they occur. The Court ruled that the acts or decisions exclusion precluded coverage, and the basis for the Court's ruling on that was that Mr. Wake, with respect to the recording studio equipment, made a decision to seize that equipment. Now, Mr. Wake's position is, as set forth in the record, that that was seized on behalf of Gold Circle Entertainment to secure the debt for the embezzlement. Mr. Cronemeyer's position is that essentially it was stolen or converted, is the way I would view it, in retaliation for these allegations of sexual molestation. Now, from our point of view, the acts or decisions exclusion would apply in any event because it is still a volitional act by Mr. Wake to seize this property. This is something that didn't happen as a matter of fortuity, and that is an intentional act for purposes of the acts or decisions exclusion. We also believe that under California insurance ---- Kennedy, is your argument that all intentional acts are excluded? No. And my argument is that we don't need to go into every possible hypothetical and say, well, if this hypothetical, could it be covered? We know, well, that might not be covered. My position is that under the facts of this case, and there are really only two characterizations in this case, one is theft, the other is seizure for a protected intention, I guess a death, basically, that both of those things that are in this case, and we shouldn't look at the policy in the context of things we can dream up. We look at it in the context of what is before us in the case. Both of those acts are intentional, volitional acts. These policies cover fortuities. They cover that by virtue of what is in the policy, because the policy excludes intentional acts or decisions. They cover that by virtue of California law, insurance code section 22, which requires fortuity for there to be anything insurable. What the appellant is asking the court to do is convert this property policy into a vehicle to protect Mr. Wade from consequences of his intentional, volitional acts. And that is clearly not what this policy is intended to do. No, but you had just told us that the owner of the other property also has an interest in compensation. The owner of the other property has an interest in compensation. If the casualty loss is caused by something that is covered under the policy. Right. But what is the, you know, the fact that Mr. Waits may have been, as an insured, may have engaged in reprehensible behavior, what does that, why should that have an adverse effect on the interests of, if I may, a co-insured? I don't agree that they're a co-insured. You're saying they're not co-insured. They're not a co-insured. They're clearly not an insured. So if I leave my property, I come in, I'm a recording artist, and I leave my, you know, $3 million Fender unique guitar there, and Mr. Waits goes in and smashes the heck out of it because he doesn't like the way that music was played. That brings to mind some concerts I went to years ago. But in any event, you're saying that I'm out of, the guitar player's out of luck. I'm saying that the guitar player does not have a cognizable claim under the policy because the policy exclusions preclude coverage for Mr. Waits' intentional destruction of property. I am also saying that under California law, that is a non-fortuitous event when judged from the standpoint of the insured, which is what the restatement in Intermetal Metallica. Suppose it's a result of, we'll say, you know, a psychotic episode. Well, if there's a psychotic episode, I think there would be an issue as to whether there were. . . It could be fortuitous then, right? There could be. There could be, but in this particular case, the allegation is that it was made as for retaliation or seizure to protect the debt. So, again, we have to look at the facts that are in this record. Now, if we had some sort of diminished capacity issue, that's just not in this record. That's a different question. So what I'm saying is this policy doesn't cover insureds. It doesn't give them a license to go out and volitionally destroy property and it's all going to be taken care of by the carrier. That's not what this is intended to cover, and that's not what the State of California Insurance Code 22 permits there to be coverage for. And this policy also says that the act, intentional act by any person to cause damage is not covered, and that is what the Court found. We agree with that. And we also believe that, based on Insurance Code 22, there was a lack of fortuity. We think that the Court's, underlying Court's reasoning on the acts or decisions applies equally to the fortuity issue because it is essentially the same issue. And I think I'll reserve for any other questions, Your Honor, if anyone has any. Questions? No questions. All right. Thank you very much. Thank you. Mr. Butler. Very briefly, Your Honors, thank you. The traveler's fortuity argument has been decisively rejected by every court that's considered it, and we cite those cases on page 21 of our reply brief. What it comes down to is that an illegal act is never fortuitous. It's always unexpected. I would like to address the business income issue. We believe that the traveler's interpretation of the policy is mistaken, that that clause in fact applies to persons, that the personal property of others clause does, in fact, fall within the ambit of the business income clause. However, we also believe, as Justice Fischer pointed out, that we are third-party beneficiaries of the insurance clause itself. And that, we believe, is established not only by California law, but the fact that we're, again, specifically mentioned in the policy. And, again, it set forth terms for our benefit. Now, wait a minute. Which clause are you talking about being third-party beneficiary? The property or the business? Both of them, Your Honor. Both of them. What's the language in the business income? Let's accept that we are, in fact, co-insurers. The business income clause provides that only insurers. But that's not as a third-party beneficiary. You're trying to say you're within the business income clause as a co-insurer, not as a third-party beneficiary. It's the former. It's the latter, Your Honor. I'm sorry. As a third-party beneficiary, we have the status of co-insurance. What's your authority for that? We believe that is the import of the. Hold on. Shade Foods versus Innovative Product Sales, Your Honor. It appears at page three of our reply brief. Okay. Let me see if I got this right. You said, as I got it, under the business insurance policy, business income coverage, that sentience is a third-party beneficiary, so it therefore has the status of a co-insured. Is that? That's correct, Your Honor. That's what you said? That's correct, Your Honor. Where do you get that? In other words, isn't there a difference between being a third-party beneficiary and being a co-insured? We believe in this case it's a semantic difference, Your Honor. Okay. Where do you get that? Where do you spring across that bridge? In other words, I could see a third-party beneficiary argument, perhaps, but co-insurance co-insured is a much different status. Well, we concede that the words sentience studio do not appear in the list of named insurance. So to that extent, we are not an insured. We are not a named insured. However, we believe that we have the functional status of a named insured because we are third-party beneficiaries. Perhaps that's the best way to express it. Well, that's just words. In other words, any time a person is a third-party beneficiary under an insurance contract, they are co-insured with the insured under that policy? That's correct, Your Honor. They have the functional status of a co-insured, even though they are not enumerated or listed as a named insured. Is that California law? We believe it is, Your Honor. That's all Shade Foods, huh? That's Shade Foods. That's correct. Co-insured is a term of art in insurance law, right? I believe it is, Your Honor. So you're saying third-party California, the Shade Foods, I'll have to go back and look at that again. But Shade Foods basically has transmogrified third-party beneficiary status into the functional equivalent of co-insured. That's correct, Your Honor. Obviously, it doesn't somehow magically insert our name into the policy itself. But we believe that under that case, we have the same rights and responsibilities as a co-insured. And that would be true under the property clause? That's correct, Your Honor. So my hypothetical guitar player is a co-insured? If it was the guitar player's guitar, then yes. If it was not the guitar player's, yes, functionally a co-insured. If it was somebody else's guitar, then the answer would be no. Thank you very much. All right. Thank you. We thank both counsel. The case is submitted for decision. And the panel will take a brief.
judges: T.G. Nelson, Tashima, Fisher